## JONES v. THE STATE OF IOWA.

The act of February 16, 1843, entitled "An act defining crimes and punishments," was repealed by section twenty-eight of the Code, which repeal carried with it the proviso in the act of 1843, by virtue of which alone the right to punish offences against the act of 1839, defining crimes and punishment, existed.

Section 32 of the Code, reserves the right to punish any offence committed under any act repealed by the Code.

Unless the power to punish offences committed under the act of 1839, is reserved affirmatively, the right ceased with the act that created it.

If reserved affirmatively, as it was by the act of 1843, it would cease, when the act reserving it was repealed.

The right to punish offences committed under the act of 1839, is not saved from the general repeal of 1851, by section 32 of the Code.

*Error to the Des Moines District Court.*

THE plaintiff in error was indicted and convicted in 1855, of the murder of one McCardle, in October, 1840, and sentenced to the penitentiary for life. On the trial below, the defendant, among other things, asked the court to instruct the jury as follows:

" 1. That the Code, passed in 1851, repealed the territorial laws of 1843, and did not reserve the power, or continue the act of 1839 in force, so as to retain jurisdiction over offences committed under the act of 1839.

" 2. That the act of 1839, defining crimes and punishments, is not now in force.

" 3. That the law of 1839, having been repealed, the defendant cannot be convicted, even if he committed an offence under that law."

These instructions the court refused to give, and the defendant excepted. He now brings the case here for review, and assigns for error, among other things, the refusal to give the foregoing instructions, and the rendition of the judgment against him. The facts of the case, necessary to an understanding of the decision, are sufficiently stated in the opinion of the court.

*J. C. Hall* and *D. Rorer*, for the plaintiff in error, made the following points:

1. The law of 1839, was repealed by the law of 1843, with a clause saving offences, but this saving inured to the territory ; and even if the Code, page eight, repealing the law of 1843, could be construed to save crimes against the law of 1839, still the state cannot punish, for the saving was

in behalf of the territory, which is now extinct. 4 Howard, 589; 9 Ib. 246; 10 Ib. 72.

2. But the law of 1839, was repealed before the Code was in force, and the Code only saves crimes against those laws which it repeals, viz: the laws of 1843; and it could only save such as were "pending" as "prosecutions," at the time of organizing the judiciary under the constitution. Const. of Iowa, art. 12, § 4.

3. Section 48 of the law of 1843, was repealed by the Code. So that which was reserved is not only gone, by such repeal, but it ceased to exist when the territorial government was abrogated; for the reservation was to the territory, and never inured to the state. A saving clause cannot create a right. Smith's Const. Law, §§ 575, 577.

4. All prosecutions are to be in the name of the state, that is, *new* ones. Of those for crimes against the territory, those only are saved for which prosecutions were pending at the organization of the judiciary. Const. art. 12, § 4; art. 5, § 6. And the including the one class, excludes the other. So, where they were not pending, there is no jurisdiction. 5 Texas, 423; 1 Kent Com. (5th ed.) 457; Smith's Const. Law, § 764; *United States* v. *Heth*, 3 Cranch, 399.

5. The intent is to govern, but that intent is to be ascertained from the words used, and not from the mischief. Smith's Const. Law, § 749; 3 Cranch, 399; 6 Ib. 311; 2 Ib. 119; 5 Ib. 79. When a statute is repealed, it is closed; it is as if it never had existed. Smith's Const. Law, §§ 767, 773.

*D. C. Cloud*, Attorney-General, and *J. P. Hornish*, for the state, contended that a saving clause in a statute, in some instances, has all the force and effect of a statute, and should have the same construction; especially, when a different construction would defeat, not only the intention of the legislature, but the administration of justice; and that the power to punish offences committed under the act of 1839, was reserved by section thirty-two of the Code. In support of their views, they cited the following authorities:

*Mirer* v. *Mechanics' Bank*, 1 Peters, 64; *Wilkinson* v. *Leland*, 2 Ib. 662; *United States* v. *Sims*, 1 Cond. Repts. 305; *Brown* v. *Barry*, 1 Ib. 165; *Cooper* v. *Telfair*, 1 Ib. 211; *Pennington* v. *Coxe*, 1 Ib. 346; *United States* v. *Fisher*, 2 Cranch, 358; *Durosesseau* v. *United States*, 6 Ib. 307; *The Paulina's Cargo* v. *United States*, 7 Ib. 52; *Evans* v. *Jourdan*, 9 Ib. 263; *Preston* v. *Browder*, 1 Wheat. 115; *United States* v. *Shelden*, 2 Ib. 119; *United States* v. *Weilberger*, 5 Ib. 76; *The Irresistible*, 7 Ib. 551; Smith's Com. 894; 1 Scam. 258; 15 Peters, 445; 1 Term, 141; 7 Wheat. 551; 1 Kent Com. 464; 8 Pick. 370.

ISBELL, J. (WRIGHT, C. J., dissenting).—This case comes before this court on the sole, broad question, whether there now exists any authority to punish the offence. Various views have been presented by counsel, involving, not only the changes which have taken place by repeal in the ordinary statute laws of the territory and state, since the offence was committed, but also the great change produced by the adoption of our constitution, and the passing from the condition of a territory to that of a sovereign state. We deem it, however, necessary to notice one view only insisted upon in behalf of the prisoner, regarding that as decisive of the question.

It is claimed, that the power is not reserved by the Code, adopted in 1851, to punish offences committed under the act of 1839. In setting out, we assume that this prosecution can only be conducted, or punishment inflicted, by authority of the state; that is to say, that the right to punish the offence must exist, if it does exist, by virtue of statute law; that the power to punish must affirmatively appear; and that the court will not take upon itself the power to punish by implication. We also assume, as a matter of fact, about which there is no question, that the offence was committed, and the penalty incurred, while the act, approved January 25, 1839, was in force, as the criminal code of the then territory of Iowa. Subsequently, on the 16th of February, 1843, an act entitled "An act defining crimes and punishments," was approved; which act commences by de-

claring, that "the following shall hereafter be the code of criminal jurisprudence in the territory of Iowa," and concludes (see Stat. 1843, 193) as follows: That the act entitled an act defining crimes and punishments, approved January 25th, 1839, be and the same is hereby repealed: *Provided,* that any person or persons who may have committed any crime punishable under the provisions of the act hereby repealed, prior to the taking effect of this act, shall be prosecuted and punished according to the act hereby repealed, in the same manner such person or persons might or ought to be prosecuted and punished, if this act had not been passed."

In 1851, an entirely new code of criminal law was adopted. By section 28 of this code, it is provided that all public and general acts passed prior to the present session of the General Assembly, are repealed, &c., subject to the limitations and exceptions hereinafter expressed. Section 32 provides, that no offence committed or penalty or forfeiture incurred, under any act hereby repealed, and before the repeal takes effect, shall be affected by the repeal, except that where a punishment, penalty, or forfeiture is mitigated by the provisions herein contained, such provisions shall be applied to a judgment to be pronounced after the repeal.

Assuming, for the purpose of the present view, that the constitution, and the act adapting the laws in force to the state government, retained in force the statutes up to the adoption of the Code in 1851, we will proceed to inquire how the punishment or offence would stand affected by the laws above quoted. The criminal code of 1839, was repealed by the act of 1843. But by virtue of the proviso contained in the 48th section of the latter act, persons who had offended against the act repealed, remained liable to be punished according to that repealed act. Section 28 of the Code, adopted in 1851, made one general repeal of all public acts, subject to certain exceptions. By this, the act of 1843, containing this proviso, was repealed, which repeal carried with it the proviso, by virtue of which alone the right to punish offences against the act of 1839, existed. We think it, then, quite manifest, that unless there is some ex-

ception to the general repeal, by virtue of section 28 of the
Code, above quoted, whereby the power to punish offences
against the act of 1839 is reserved, that that power is gone.
Unless the power to punish the offence, is reserved affirma-
tively, it would cease with the act that created it. If reserved
affirmatively, as was this by the act of 1843, it would cease
when the act reserving it was repealed.

But, it is claimed, that section 32 of the Code of 1851,
does furnish such exception. The language there used is,
" no offence committed, and no penalty or forfeiture in-
curred, under any *act hereby· repealed,* shall be affected by
the repeal." This provision undoubtedly reserves the right
to punish any offence committed under any act repealed by
the Code ; but the offence here charged, was not committed
under an act repealed by the Code ; for the act under which
it was committed, was repealed by the act of 1843. But it
may be said, that this is giving to the statute a construction
too literal. It must be remembered, however, that penal
statutes, particularly in favor of life, or which is much about
the same thing, liberty for life, should be construed strictly
in bringing the case within the scope of the act. It is also
claimed, that the intention of the legislature, was to reserve
the right to punish offences *liable to be punished* under any
former act at the time of the adoption of the Code, and not
simply offences against acts repealed by it. It would have
been very easy for the legislature to have provided, that the
repeal should not affect any *offence committed before* the time
of the repeal, as is provided in section 31 immediately pre-
ceding the one under consideration, which is an exception
in relation to civil matters from this same general repeal;
the language there used being : ".This repeal of existing
acts, shall not affect *any act done,*" &c., " *before the time when
such repeal takes effect,*" &c. But the legislature saw proper
to provide otherwise. If allowed to speculate upon what
was in the mind of the legislature, while much might be
said on the one hand, as to the offence being one which has
been always excepted from limitation laws, and the like ar-
gument, going to show that the legislature never intended

to relinquish the right to punish such offence; on the other hand, it may be urged, with equal plausibility, that a legislature, in adopting an entirely new set of laws, has a perfect right to determine how far back in the past, courts shall go to punish public offences. And when we consider that the acts repealed by the Code, extended back eight years from the time of its adoption, to a time when society in the then territory was in its infancy—to a time when many exciting strifes, peculiarly incident to the settling of a new country, existed—and also, that since that time, an entire change has been effected in all our laws, both statutory and organic; there will be many circumstances found to exist to render such a limitation at least reasonable. Again: if this construction should not be entirely clear—should it even admit of a doubt only—the prisoner is entitled to the benefit of such doubt. Believing, as we do, that a right to punish offences committed under the act of 1839, is not saved from the general repeal of 1851, we conclude that the judgment must be reversed, and prisoner discharged from further confinement.

WRIGHT, C. J. (dissenting).—I most respectfully dissent from the foregoing opinion. I first premise, that the crime charged is among the highest known to the law, and has always been so treated and regarded by the laws of civilized nations. While by our laws, and those of all the states, certain periods of limitation are fixed, within which most other crimes must be prosecuted, yet, with regard to this offence, such is its enormity, no such limitation, it is believed, has ever been made. In all such statutes, this crime, like treason against the government, will be found to be expressly excepted. And hence, in 1843, in the act for the limitation of suits on penal statutes and criminal prosecutions, which provided that all prosecutions for offences committed before the organization of the territory, should fail and be utterly null and void; this crime, with a few others, was expressly excepted. And as, by the majority opinion, section 32 of the Code, is treated substantially as a statute of limitations,

I think this thought worthy of much consideration. For if, in all our past legislation, and that of other states, care has been taken to reserve the power, without limit, to punish this offence, I will not believe that such right has been surrendered by implication, or by language that does not show a clear surrender of the right.

Again: I admit that, but for the saving clause, contained in section 48 of the act of 1843, there would have remained no power to punish this offence. The provision there made as to past offences, however, I think, was substantially to that extent a re-enactment of the law of 1839. Then, up to the adoption of the Code, it is conceded, that this offence could have been punished. I ask, by what authority, and why? Clearly, because it was in violation of the law of 1839, which, as to past offences, was expressly continued in force. For such offences, it was just as much the law of the land, as was the law of 1846, for all subsequent offences. Our courts, in the administration of it, and in punishing offences committed thereunder, must necessarily have so treated it. It had all the vitality of the law of 1843, with reference to any violation of its provisions, committed before the law repealing it. The power to prosecute, convict, and punish offenders against the act repealed, remained as perfect as if the repealing act had never been passed. There was no power to punish created by the repealing act of 1843, but an express preservation of a power that before existed. *The Irresistible,* 7 Wheat. 551.

Could this power be taken away, except by the same power that gave it? Certainly not. When, then, was this power, so preserved, revoked, recalled, abrogated, or repealed? By the 32d section of the Code, it is said. Very well. Then, was not such repeal or revocation of the power so preserved, as much an act thereby *repealed,* as was the law which preserved the power? If so, and I cannot otherwise regard it, then I am clear that the saving clause of that section, saves and preserves the power to punish this offence, as completely as it does the power to punish infractions of the law of 1843. Further, I admit that power to

punish this offence ought to appear affirmatively, and should not be taken by implication. But if the power to punish was clear and manifest, at the time of the adoption of the Code, which must be, and is conceded, then such power should not be taken away by implication. While such statutes should receive a strict construction, yet the intention of the law-making power, ought not to be defeated by an over strict construction. *United States* v. *Morris*, 14 Pet. 464. The rule does not exclude the application of common sense, in order to avoid an absurdity which the legislature ought not to be presumed to have intended. *Commonwealth* v. *Loring*, 8 Pick. 370. And if you may construe so as to avoid an absurdity, so I think you may, to avoid the conclusion that the legislature designed to revoke the power to punish a crime of so great enormity, unless such intention is evident. The law will not favor repeals by implication. *Wood* v. *The United States*, 16 Pet. 342; Smith's Com. 879; *Bruce* v. *Schuyler*, 4 Gillman, 221. And, upon a like principle, it would appear reasonable, that the law would not favor, by implication, the revocation of a presumed power to punish the crime of murder. So, all parts of a statute, and different statutes, in *pari materia*, whether repealed or not; in short, the whole system of legislation, on the subject matter, is to be considered with reference to the intent. Smith's Com. 751; *United States* v. *Fisher*, 2 Cranch, 386; 1 Kent, 468. Under this rule, if by the act for the limitation of criminal prosecutions, before referred to, which is a part of our legislation on this subject, prosecutions for certain offences were prohibited, and the crime of murder was excepted, we will be justified in saying that the intention, in this case, was to do that by implication, which never before was done directly and expressly.

So, also, by another statute on the subject of repeals, passed July 30, 1840, and re-enacted in the session of 1843, it is provided that no offence, committed previous to the time when any statutory provisions shall be repealed, shall be affected by this repeal. This is a part of the legislation on this subject matter, and, as such, shows quite clearly

that the object has continuously been to prevent, by constant guards, the very state of things which is held to exist by the opinion of the majority.

I conclude, then, that the statute of 1843 did not destroy or create the law of 1839, but continued it in full force, so far as related to offences committed under it; that it so continued in force, until the adoption of the Code; and that the Code did not destroy or abrogate the power to punish offences committed under it, but saved it—the same as it did under the law of 1843. Also, that our whole system of legislation, as well as that of all the states, shows that the power to punish the crime of murder, has seldom, if ever, been limited by time, and never has been revoked or recalled, except by express provision. And, finally, that in the construction of even penal statutes, we are to search out and follow the true intent of the legislature, and to adopt the sense which harmonizes best with the context, and promotes, in the fullest manner, the apparent objects and policy of the legislature. *United States* v. *Mim*, 3 Sumner, 207; *The Schooner Harriet*, 1 Story, 251. And the construction which I claim, while it does not, in my opinion, violate any language used, does harmonize with the context, and the legislation on this subject, and promotes fully the objects and policy of the legislature. Believing, as I do, then, beyond any fair or reasonable doubt, that this offence is still punishable under our law, I am constrained to dissent from the order discharging the prisoner.